## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| COLLEGE SPORTS COUNCIL, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | )   Civil Action No. 03-1911 (RBW) |
|  | ) |
| GOVERNMENT ACCOUNTABILITY | ) |
| OFFICE, <u>et al.</u>, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

---

## MEMORANDUM OPINION

College Sports Council ("the plaintiff") brings this action against the United States of America, the Government Accountability Office ("GAO"), the Comptroller General, and multiple GAO employees (collectively "the defendants"),[1] seeking declaratory and injunctive relief for "material misstatements" allegedly made in a 2001 GAO report to Congress concerning the opportunities for men's and women's participation in intercollegiate athletics.  Amended Complaint ("Am. Compl.") ¶¶ 1-5, 7.  The plaintiff contends that these alleged misstatements violated Section 805 of the Higher Education Amendments of 1998, the United States Constitution, and various federal ethical standards and professional duties.  <u>Id.</u> ¶ 8.  The plaintiff asks that the 2001 GAO Report be rescinded and that the defendants be made "expeditiously to

---

[1]        The plaintiff's Amended Complaint ("Am. Compl.") names David Walker, the Comptroller General; Marnie Shaul, "a director within the GAO's division on Education, Workforce, and Income Security Issues"; and fifty unidentified GAO employees as defendants in this action in their individual and official capacities. Am. Compl. ¶ 7.

prepare and disseminate a new report that meets the statutory criteria of Section 805." Id. ¶ 5.

Currently before the Court is the defendants' motion to dismiss the plaintiff's complaint.[2]  For

the reasons set forth below, the Court finds that the plaintiff has failed to state a claim upon

which relief can be granted.  The Court therefore grants the defendants' motion to dismiss.

## I. Background

The GAO is "an independent agency within the Legislative Branch that exists in large

part to serve the needs of Congress."  Bowsher v. Merck & Co., Inc., 460 U.S. 824, 844 (1983).

Moreover, the Comptroller General, as the head of the GAO, is "an Officer of the Legislative

Branch."  Bowsher v. Synar, 478 U.S. 714, 731 (1986).  Among the Comptroller General's duties

is an obligation to "make [any] investigation[s] and report[s] ordered by either House of

Congress or a committee of Congress having jurisdiction over revenue, appropriations, or

expenditures." 31 U.S.C. § 712(4) (2000).

In October 1998, Congress passed Section 805 of the Higher Education Amendments of

1998 ("Section 805"), a reporting statute requiring the Comptroller General to "conduct a study

of the opportunities for participation in intercollegiate athletics" and to report the findings of the

study to appropriate committees within both houses of Congress.[3]  Pub. L. No. 105-244 § 805,

---

[2]     The following papers have been submitted in connection with this motion: (1) Memorandum in
Support of Defendants' Motion to Dismiss Plaintiff's Supplemented Amended Complaint ("Defs.' Mem."); (2)
Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss
("Pl.'s Opp."); and (3) Reply in Further Support of Defendants' Motion to Dismiss Plaintiff's Supplemented
Amended Complaint ("Defs.' Reply").  Additionally, the plaintiff has filed two notices of supplemental authority for
its arguments regarding standing and sovereign immunity.  Because the Court decides this case on other grounds, it
does not reach those arguments.

[3]     Five other congressional reporting statutes were passed as part of the reauthorization of the Higher
Education Act of 1965.  Pub. L. No. 105-244 §§ 801-804, 806, 112 Stat. 1803-1806, 1808 (1998).  Two of these
statutes required the Comptroller General and the Secretary of Education together to conduct a study and report its
findings to Congress, id. ¶¶ 801-02, and three were directed at the Secretary of Education alone, id. ¶¶ 803-04, 806.

112 Stat. 1807 (1998).  The statute, entitled "Study of Opportunities for Participation in Athletics Programs," contained two subsections.  The first subsection directed the Comptroller General to address, inter alia, the following issues for the twenty-year period preceding 1998: (1) the aggregate increase or decrease in interscholastic and intercollegiate athletic teams; (2) the aggregate increase or decrease in student participation in interscholastic and intercollegiate athletics; (3) the men's and women's interscholastic and intercollegiate sports "most affected by increases or decreases in levels of participation and [aggregate] numbers of teams"; (4) "all factors that have influenced campus officials to add or discontinue" interscholastic and intercollegiate athletic teams; (5) the budgetary impact of a school's decision "to increase or decrease the number of intercollegiate athletic teams or the participation of student-athletes"; and (6) "the alternatives, if any, institutions of higher education have pursued in lieu of eliminating or severely reducing the funding for an intercollegiate sport, and the success of such alternatives." Id. § 805(a).  The second subsection required the Comptroller General to "submit a report regarding the results of the study to the Committee on Labor and Human Resources of the Senate and the Committee on Education and the Workforce in the House of Representatives."  Id. § 805(b).

In March 2001, the GAO completed its study and issued a report entitled "Intercollegiate Athletics: Four-Year Colleges' Experiences Adding and Discontinuing Teams" to the appropriate congressional committees.  GAO-01-297 (Mar. 8, 2001) ("2001 GAO Report").  The GAO stated at the outset of the report that while Section 805 "also required information on high school and 2-year college athletics, because of limited readily available information and the difficulty of collecting comparable information from these schools, as agreed with your offices, we focused

only on 4-year intercollegiate athletics." Id. at 3 (emphasis added).  The GAO then summarized

its methodology:

> To determine changes in the number of participants and teams at 4-year colleges and universities, we obtained statistics from the two largest national intercollegiate sports associations for 4-year colleges and universities – the National Collegiate Athletic Association (NCAA) and the National Association of Intercollegiate Athletics (NAIA).  Information for these schools covered 18 years – school years 1981-82 through 1998-99. . . .  To gather information to respond to the other questions, we sent a questionnaire covering the 1992-93 to 1999-2000 school years to athletic directors at all 1,310 4-year schools that belong to one of these two associations. . . .  Our work was done between February and December 2000 in accordance with generally accepted government auditing standards.

Id. at 4.  The GAO further stated that "the statistics provided by the NCAA and NAIA . . . are the

best available data and are widely used by researchers to study intercollegiate participation." Id.

at 32.  The report was signed by defendant Marnie Shaul, and copies were sent to the Secretary of

Education, the NCAA and NAIA, and "other interested parties." Id. at 30.

　　On September 12, 2003, the plaintiff brought this action on behalf of its members,

alleging that the GAO had not complied with the statutory requirements of Section 805.[4]

Complaint ("Compl.") ¶ 12-27.  The plaintiff then filed a sprawling 64-page amended complaint

on December 29, 2004, in which it expanded the laundry list of "material misstatements"

allegedly contained in the 2001 GAO Report.[5]  Am. Compl. ¶¶ 40-95.  The amended complaint

---

[4]　　The plaintiff, an "umbrella group" of organizations and individuals with an interest in intercollegiate athletics, advises the general public "on the existence of widespread discrimination against male athletic teams and athletes" and advocates "the cessation of such discrimination and the reform of federal, state, and local policies to prevent such discrimination." Am. Compl. ¶ 6.

[5]　　The plaintiff claims that these "material misstatements" have hurt its educational efforts by misleading the District of Columbia Circuit, members of Congress, and "prominent individuals and institutions within the athletic community," among others.  Am. Compl. ¶¶ 55-59.  Because the Court concludes that the plaintiff has failed to state a claim on which relief can be granted, it is unnecessary to detail the material misstatements alleged by the plaintiff.  As the Court explains infra, even assuming that the plaintiff is correct (1) that the 2001 GAO

(continued...)

also alleged that defendants GAO, Walker, and Shaul breached an array of ethical and

professional duties through actions that were "fraudulent, constructively fraudulent, so gross a

mistake as to constitute fraud, arbitrary, capricious, and not otherwise in accordance with the

law." Id. ¶¶ 149-186.  The plaintiff further asserts in the amended complaint that the apparent

agreement between the GAO and the congressional committees to limit the scope of the study

amounted to an amendment of Section 805 in violation of the bicameralism and presentment

clauses of the United States Constitution.  Id. ¶¶ 124-130, 144-148.[6]  Finally, the plaintiff filed a

supplemental complaint on February 25, 2005, claiming that defendant Walker further breached

his ethical duties by making public statements regarding the 2001 GAO Report.  Supplemental

Complaint ("Suppl. Compl.") ¶¶ 198-204.

On May 20, 2005, the defendants moved to dismiss this action, arguing that the plaintiff

has failed to state a claim upon which any relief can be granted.[7]  Specifically, the defendant

---

[5](...continued)
Report is materially misleading, (2) that it does not comply with Section 805, and (3) that the defendants
intentionally skewed the report's conclusions to conform to their own "preconceived ideas . . . induced by political,
ideological, and social convictions," Am. Compl. ¶¶ 89-90, the fact remains that the plaintiff has no viable basis for
judicial review of its claims.

[6]        The essence of the plaintiff's lawsuit is the defendants' allegedly "ongoing violation of Section 805
. . ., federal ethical standards applicable to federal government accounts [sic], and Article I, Sections 1 and 7, of the
U.S. Constitution."  Am. Compl. ¶ 8.  In addition to the plaintiff's claim that "this Court has jurisdiction pursuant to
28 U.S.C. §§ 1331, 1361, the Acts of March 3, 1863, 12 Stat. 762, and June 25, 1936, 49 Stat. 1921 (as amended),
and D.C. Code § 11-501," id., the plaintiff also states that the Court "has equity jurisdiction over ongoing injurious
falsehood, misrepresentation, fraud, constructive fraud, and mistake so gross as to amount to fraud," id. ¶ 10.  And,
according to the plaintiff, "[t]he Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-706, the Declaratory
Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202, and the All Writs Act, 28 U.S.C. § 1651, provide further authority
for the requested relief."  Id. ¶ 8.  Finally, the plaintiff claims, albeit obliquely, that it is entitled to relief under the
Mandamus and Venue Act, 28 U.S.C. § 1361.  Id. ¶¶ 8, 187.

[7]        The defendants also argue (1) that the plaintiff has not demonstrated injury sufficient to confer
Article III standing and (2) that its claims are barred by sovereign immunity.  Defs.' Mem. at 12-21, 26 n.12.
Because the Court finds that the plaintiff has failed to state a cognizable legal claim, it need not visit these issues.
Cf. Ctr. for Law and Educ. v. Dep't of Educ., 396 F.3d 1152, 1156 (D.C. Cir. 2005) (stating that courts "need not
identify every ground for holding that a claim is not justiciable") (citation omitted).

argues (1) that Section 805 does not provide a private right of action by which the plaintiff can

sue to enforce compliance with its provisions, Def's Mem. at 23-25; (2) that the GAO is not an

"agency" within the meaning of the Administrative Procedures Act ("APA"), id. at 25-28; (3)

that, in any event, congressional reporting statutes are not generally subject to judicial review, id.

at 21-23; (4) that the plaintiff has not alleged a colorable constitutional violation, id. at 20-21; (5)

that the plaintiff has not set forth a cognizable claim for fraud or breach of an ethical duty, id. at

30-34, Defs.' Reply at 12-14; and (6) that the plaintiff has failed to state a claim under the

Mandamus and Venue Act, Defs.' Reply at 19-22.

        In return, the plaintiff asserts that "Section 805 imposes a clear duty to prepare a clearly

defined study, and the ethical provisions impose a clear duty to notify parties . . . relying on the

report of its misstatements," Pl.'s Opp. at 27-28 (citations omitted), and contends that the GAO is

an agency for the purposes of the APA, id. at 35-38.  Further, the plaintiff reiterates that the

defendants unconstitutionally "amended" Section 805 and that the Court's equity jurisdiction

allows it to entertain the plaintiff's claims notwithstanding the absence of any express legal right

of action.  Id. at 33.

## II. Standard of Review

        When evaluating a motion for failure to state a claim upon which relief can be granted

pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must treat the complaint's

factual allegations as true and must grant the plaintiff the benefit of all inferences that can be

derived from the facts alleged." Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1113 (D.C. Cir.

2000) (internal quotation marks and citations omitted).  A complaint may be dismissed under

Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could

be proved consistent with the allegations." Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002).

However, the Court need not accept "inferences unsupported by facts set out in the complaint or

legal conclusions cast as factual allegations." Rasul v. Rumsfeld, ___ F. Supp. 2d ____, ____,

2006 WL 266570, *4 (D.D.C. Feb. 6, 2006) (citations omitted).  Moreover, "[b]are conclusions

of law and sweeping and unwarranted averments of fact will not be deemed admitted" for the

purposes of a Rule 12(b)(6) motion.  M.K. v. Tenet, 99 F. Supp. 2d 12, 17 (D.D.C. 2000) (citing

Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987)).

### III. Analysis

**A. The Plaintiff's Section 805 Claim**

The plaintiff first claims that the defendants "have violated their statutory obligation to

prepare and to submit the report required by Section 805" as a result of the alleged deficiencies

and misstatements of the 2001 GAO Report.  Am. Compl. ¶ 143.  The defendants, however,

contend that the plaintiff has no right to bring suit seeking enforcement of Section 805.  Defs.'

Mem. at 23-25.  According to the defendants, "[t]he text of Section 805 contains none of the

'rights-creating language' that is an essential predicate for a determination by the Judiciary that

Congress intended to confer rights on private individuals or entities."  Id. at 24 (quoting

Alexander v. Sandoval, 532 U.S. 275, 288 (2001)).  The plaintiff does not dispute, or even

address, the defendants' arguments regarding Section 805's text, nor does it argue that Congress

intended to create a private right of action to enforce the reporting requirement of the provision.[8]

See generally Pl.'s Opp. at 1-44.  Instead, the plaintiff appears to rely on the Court's equitable

---

[8]        Indeed, in an unrelated section of its opposition to the defendants' motion to dismiss, the plaintiff
candidly acknowledges "the relatively rigorous requirements for establishing congressional intent to create a private
right of action."  Pl.'s Opp. at 22 (quoting Am. Friends Serv. Comm. v. Webster, 720 F.2d 29, 52 (D.C. Cir. 1983)).

powers as the basis to enforce the defendants' "clear duty to act" under the reporting statute, id. at 28, and to "enjoin an agency's injury-causing actions absent express authority to undertake those actions," id. at 32.[9]  The Court agrees with the defendants that the plaintiff cannot bring a claim under Section 805.

It is a bedrock principle that "[l]ike substantive law itself, private rights of action to enforce federal law must be created by Congress." Alexander, 532 U.S. at 286 (citing Touche Ross & Co. v. Redington, 442 U.S. 560 (1979)).  For this reason, "violation of a federal statute alone is inadequate to support a private cause of action." Tax Analysts v. Internal Revenue Serv., 214 F.3d 179, 185 (D.C. Cir. 2000).  Rather, the Court must "interpret the statute Congress has passed to determine whether it displays an intent to create . . . a private remedy." Alexander, 532 U.S. at 286.  Without clear indication of such statutory intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Id. at 286-87 (citations omitted).

In determining whether Congress intended Section 805 to confer a private right of action, the Court "must begin with the language of the statute itself." Touche Ross, 442 U.S. at 568.  From even a cursory reading of Section 805, it is plain to see that "rights-creating language . . . is completely absent" from the statute's text. Alexander, 532 U.S. at 288.  Section 805 merely directs the Comptroller General to "conduct a study of the opportunities for participation in intercollegiate athletics" and "submit a report regarding the results of the study" to committees

---

[9]    The plaintiff's opposition states that "all but one of [the plaintiff's] bases for review (the APA) reside in the Court's equitable powers." Pl.'s Opp. at 26.  Thus, the plaintiff has arguably abandoned its claim for relief under Section 805.  Nonetheless, the Court will address the claim.

within the House of Representatives and the Senate.  Pub. L. No. 105-244 § 805, 112 Stat. 1807.

Nowhere does it state that a private entity may bring suit to enforce its provisions.  Id.

Nor does Section 805 confer duties upon the defendants to any entity (or persons) other

than Congress.  Id.  Nevertheless, the plaintiff argues that its right to bring this action arises from

the GAO's duty to create the report required by Section 805, which purportedly implicates the

plaintiff's common-law right of access because "if [the] GAO ever submits the § 805 report to

Congress, [the plaintiff] could obtain it, either from [the] GAO or from Congress."[10]  Pl.'s Opp.

at 12 (citations omitted).  This theory, however, is unavailing.  The connection between Section

805's reporting requirement and any "right of access" to the resulting report is much too

attenuated for this Court to conclude that Section 805 creates a private right of action.  Section

805 focuses not on organizations or individuals concerned with intercollegiate athletics, but

rather on the GAO itself, as it "is phrased as a directive to [a government entity overseeing] the

distribution of federal funds."  Alexander, 532 U.S. at 289 (quoting Univs. Research Ass'n, Inc.

v. Coutu, 450 U.S. 754, 772 (1981)).  As such, "there is far less reason to infer a private remedy

in favor of individual persons."  Id. (quoting Cannon v. Univ. of Chicago, 441 U.S. 677, 690-91

(1979)).  In any event, "[i]n determining whether statutes create private rights of action . . ., legal

context matters only to the extent it clarifies text."  Id. at 288 (internal citation omitted).  In sum,

there is no indication whatsoever from the text of Section 805 that Congress intended to create a

---

[10]       The plaintiff posits that because the 2001 GAO Report did not, in its view, comply with Section 805, the GAO has in fact failed to provide Congress with the report required by that statute.  See, e.g., Am. Compl. ¶ 143 (alleging that the defendants "have violated their statutory obligation to prepare and to submit the report required by Section 805").

private right of action to enforce the GAO's reporting requirement.  Accordingly, the plaintiff

may not bring suit under Section 805.

## B.  The Plaintiff's Administrative Procedure Act Claim

The plaintiff also challenges the 2001 GAO Report as arbitrary and capricious under the

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq. (2000).  Am. Compl. ¶¶ 8, 143,

148.  The defendants argue that the plaintiff's APA claim is not reviewable because (1) the GAO,

as part of the legislative branch, is not an "agency" within the meaning of the APA, Defs.' Mem.

at 25-28, and (2) congressional reporting statutes containing no express provision for judicial

review are "quintessentially within the province of the political branches to resolve as part of

their ongoing relationships," id. at 21 (quoting Natural Resources Defense Council, Inc. v. Hodel,

865 F.2d 288, 319 (D.C. Cir. 1988)).[11]  The plaintiff disagrees on both counts.  Pl.'s Opp. at 35-

38, 23-24.

Under the APA, courts are required to "hold unlawful and set aside agency action,

findings, and conclusions found to be . . . arbitrary and capricious."  5 U.S.C. § 706(2) (2000)

(emphasis added).   "Congress will be presumed to have intended judicial review of agency

action unless there is persuasive reason to believe otherwise."  United States v. Fausto, 484 U.S.

439, 452 (1988) (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 140 (1967)) (internal

quotation marks omitted).  The term "agency" comprises "each authority of the Government of

the United States, . . . but does not include . . . the Congress."  5 U.S.C. § 701(b) (2000).

Furthermore, the District of Columbia Circuit has "interpreted the APA exemption for 'the

---

[11]        The defendants argue, in addition, that the 2001 GAO Report is not a "final agency action" subject
to review under the APA.  Defs.' Mem. at 28-30.  The Court does not reach this argument.

Congress' to mean the entire legislative branch." Washington Legal Found. v. U.S. Sentencing

Comm'n, 17 F.3d 1446, 1449 (D.C. Cir. 1994) (emphasis omitted) (citing Ethnic Employees of

the Library of Congress v. Boorstin, 751 F.2d 1405, 1416 n.16 (D.C. Cir. 1985) (holding that the

Library of Congress is not an agency under the APA)).  Thus, because the GAO is "an

independent agency within the Legislative Branch," Merck, 460 U.S. at 844, the Court could

logically conclude that the GAO is not an agency for the purposes of the APA.  See also Chen v.

General Accounting Office, 821 F.2d 732, 737 n.6 (D.C. Cir. 1987) (stating that "[t]he GAO is

generally recognized as part of the legislative branch and thus exempt from many APA

provisions") (internal citation omitted).  Such a conclusion, however, is ultimately unnecessary.

The District of Columbia Circuit has expressly held that congressional reporting statutes, such as

Section 805, are not reviewable under the APA, Hodel, 865 F.2d at 319, and the Court must

adhere to that holding.

The statute at issue in Hodel directed the Secretary of the Interior to "indicate in detail . . .

to the President and Congress" its reasons for rejecting lease proposals under an Outer

Continental Shelf gas and oil leasing program.  Hodel, 865 F.2d at 316 (quoting Pub.L. No. 99-

591 § 111, 100 Stat. 3341 (1986) ("Section 111")).  The plaintiffs there sued under Section 111,

contending that "adequate explanations were not provided for the Secretary's rejection of

portions of three particular proposals." Id. at 316.  The Hodel Court began its analysis by noting

that "[S]ection 111 contains no provision for judicial review." Id. at 317.  It then reasoned that

despite the "general presumption of reviewability of agency action," the plaintiffs could not sue

the Department of Interior under the APA for failing to comply with the statute.  Id. at 318

(citations omitted).  The Court went on to say that

> Section 111 is, in essence, a reporting provision.  It embodies a direction from Congress that the Secretary respond to congressionally-designated . . . proposals and submit these responses to Congress itself. . . . [The plaintiffs] have failed to provide a single pertinent authority that suggests, much less holds, that these commonplace requirements are judicially reviewable.  We are thus being invited to sail into uncharted waters and hold . . . that the veritable cornucopia of federal reporting requirements . . . are appropriate grist for the judicial mill.

Id.  The Court declined the plaintiffs' invitation, concluding that without an explicit provision for judicial review, Section 111 "embodies a requirement that by its nature seems singularly committed to congressional discretion in measuring the fidelity of the Executive Branch actor to legislatively mandated requirements."  Id. at 318 (emphasis in original).  Whether an agency has failed to provide the information requested by a reporting statute, the Court said, is

> a judgment peculiarly for Congress to make in carrying out its own functions in our constitutional system, not for non-congressional parties to carry on as an ersatz proxy for Congress itself. . . .  It scarcely bears more than passing mention that the most representative branch is not powerless to vindicate its interests or ensure . . . fidelity to Legislative directives.

Id. at 318-319 (emphasis added).  The Hodel Court thus held that because congressional reporting statutes are "a management tool employed by Congress for its own purposes," it was inappropriate to "take the remarkable step, rife with the danger of flooding an already over-burdened judicial system with failure-to-report cases" filed by a third party claiming that the agency charged with the reporting obligation had failed to comply with its legislative mandate. Id. at 319.

        The instant case is clearly controlled by Hodel.  Section 805 is indisputably a congressional reporting statute.  Pub. L. No. 105-244 § 805, 112 Stat. 1807.  Moreover, as discussed above, the statute itself is devoid of a provision creating a private right of action.  See Alexander, 532 U.S. at 286.  Thus, even accepting the truth of the plaintiff's allegations

regarding the ostensible "material misstatements" in the 2001 GAO Report, Am. Compl. ¶¶ 40-
81, the sufficiency of the GAO's response to the requirements of Section 805 is for Congress to
decide, not the Court.  To conclude otherwise would subject <u>every</u> Congressional reporting
requirement to judicial review by private individuals or entities unsatisfied with a report's
contents or conclusions.  Where a report is "not explicitly or implicitly intended as anything more
than a vehicle to inform Congress," it is for Congress alone to "determine if the Report satisfies
the statutory requirements it enacted."  <u>Natural Resources Defense Council, Inc. v. Lujan</u>, 768 F.
Supp. 870, 882 (D.D.C. 1991).  This is all the more true where the report is completed by an
intra-branch entity like the GAO that "exists in large part to serve the needs of Congress."
<u>Merck</u>, 460 U.S. at 844; <u>cf.</u> <u>United States v. White</u>, 869 F.2d 822, 829 (5th Cir. 1989) (declining
to review the adequacy of a GAO report and stating that "[t]his court will not scrutinize the
merits or timeliness of reports intended solely for the benefit of Congress"); <u>United States v.
Erves</u>, 880 F.2d 376, 380 (11th Cir. 1989) (holding that the sufficiency of a GAO report was
properly "a legislative judgment call").  The Court thus concludes that it is exclusively Congress'
prerogative to determine whether the challenged report satisfied the requirements of Section 805.
The plaintiff, attempting to act "as an ersatz proxy for Congress itself," may not pursue such a
challenge under the APA.  <u>Hodel</u>, 865 F.2d at 318.

**C. The Plaintiff's Constitutional Claim**

The plaintiff's constitutional challenge to the sufficiency of the 2001 GAO Report must
fail for similar reasons.  The plaintiff claims that the GAO, with the approval of ranking
committee members from the House and Senate, amended Section 805 <u>sub</u> <u>silentio</u> in violation
of the bicameralism and presentment clauses of the United States Constitution.  Am. Compl. ¶¶

13

144-48; see also U.S. Const. art. I, §§ 1, 7. However, the plaintiff fails to cite any authority for the proposition that an agreement between the GAO and congressional members to limit the scope and focus of a statutorily-mandated report amounts to an unconstitutional amendment of the reporting statute. Nor does the Court's research support the plaintiff's argument. To the extent that the GAO delivered something other than what was required by Section 805, it apparently did so with the approval of the offices of ranking members of the appropriate congressional committees.[12] See 2001 GAO Report at 3 (stating that "as agreed with [congressional] offices, [the GAO] focused only on 4-year intercollegiate athletics"). There is simply no basis for raising a constitutional claim that challenges the ability of Congress, in consultation with an intra-branch entity with reporting responsibilities, to determine which congressionally mandated reporting requirements can and cannot practicably be achieved. As already noted, congressional reporting statutes are "management tool[s] employed by Congress for its own purposes," Hodel, 865 F.2d at 319, and Congress has exclusive authority to determine for itself whether a report it has requested comports with its mandate. That this determination is made midstream is immaterial. If Congress is entitled to accept or reject the finished product at its discretion, and it is, then it is surely entitled, through representatives of the appropriate

---

[12]    The 2001 GAO Report states only that the changes to the reporting requirements were "approved by [congressional] offices." 2001 GAO Report at 3. This language raises the question of whether the approval decision was made by congressional staff rather than members of Congress themselves. However, while the plaintiff notes that the Report "does not indicate precisely to what or to whom 'office' refers and does not indicate that the chairs or ranking members personally had any prior knowledge of the alleged agreement," Am. Compl. ¶ 127 (emphasis in original), the plaintiff's constitutional argument is based on the assumption that the proper congressional members were, in fact, aware of the agreement reached by their offices to allow the GAO to focus only on four-year intercollegiate athletics. If the ranking members of Congress were not aware of the de facto change in the reporting requirements, then the gravamen of the plaintiff's claim is that the defendants provided Congress with something other than what was required, which is not a claim of constitutional dimension (and which is already addressed in the Court's discussion of the plaintiff's Section 805 and APA claims). Accordingly, the Court assumes, for the purposes of the plaintiff's constitutional argument, that the defendants' agreement with the congressional offices was made with the knowledge of the proper congressional members.

committees, to engage in discussions that ultimately "shape[] the contours and content of an appropriate [GAO] response."[13] Id. Accordingly, the plaintiff has failed to state a cognizable constitutional claim.

## D. The Plaintiff's Breach of Duty Claim

The plaintiff claims that this Court "has equity jurisdiction over ongoing injurious falsehood, misrepresentation, fraud, constructive fraud, and mistake so gross as to amount to fraud," and contends that "[t]he dictates of morality and conscience require the enjoining of those who engage in ongoing, knowing fraud that injures the public."[14]  Am. Compl. ¶¶ 10, 15.  The plaintiff then lists an array of ethical and professional accounting duties it contends the defendants have breached by their allegedly fraudulent conduct.[15] Id. ¶¶ 17-39.  In response to

---

[13]      The Hodel Court observed that an additional factor supporting its conclusion that agency action pursuant to congressional reporting statutes is not presumptively reviewable was the lack of "judicially manageable standards by which to gauge the fidelity of the [agency's] response" to Congress.  Hodel, 865 F.2d at 319.  The Court then noted:

> Whether a report to Congress is sufficiently 'detailed' within the meaning of [the relevant reporting statute] is an inquiry which strikes us as inherently elusive. . . . This is all the more true in [a] situation where numerous negotiating sessions between the Secretary and the congressional negotiating team undoubtedly shaped the contours and content of an appropriate Secretarial response.  What may seem in the abstract to be reasonable factors to employ [to determine the sufficiency of a congressionally-mandated report] may be inappropriate in the extreme in the context of an on-going process of give and take in various negotiating sessions.

Id. While the Hodel Court did not address the constitutionality of such ongoing negotiations, its conclusions are equally applicable to the plaintiff's constitutional claims in this case.  It is fundamentally inappropriate for courts to preclude Congress from guiding and managing the response of federal entities from which Congress has demanded a report.

[14]      As the defendants observe, the plaintiff's claims for equitable relief against defendants Walker, Shaul, and the fifty unidentified GAO employees in their individual capacities must fail because "[t]he relief sought – withdrawal of the [2001 GAO] Report and preparation of a new one – can be obtained from [the] defendants only in their official capacity."  Defs.' Mem. at 31 n.17 (citing Vanover v. Hantman, 77 F. Supp. 2d 91, 99 (D.D.C. 1999)).

[15]      Specifically, the plaintiff alleges the breach of numerous ethical duties prescribed by the Code of Professional Conduct of the American Institute of Certified Public Accountants ("AICPA") as well as "generally

(continued...)

the defendants' argument that the plaintiff's charges of fraud have not been plead with sufficient particularity under Federal Rule of Civil Procedure 9(b), Defs.' Mem. at 30-34, the plaintiff claims that it "raises fraud not as a cause of action, but to establish the Court's jurisdiction to enforce (or declare) the relevant ethical obligations," Pl.'s Opp. at 24.  This Court, however, has no authority to exercise jurisdiction on such grounds.

The plaintiff offers no support for its conclusory claim that the defendants' duties under governmental and professional ethical standards "run to the public generally," nor that "this Court has equity jurisdiction to enforce and declare those duties."  Suppl. Compl. at 5.  In other words, no legal support has been submitted for the proposition that government accountants have any duty to members of the general public which makes them potentially liable for failing to adhere to professional accounting standards.  Instead, the plaintiff relies on "bare conclusions of law," Haynesworth, 820 F.2d at 1254, an exhaustive recitation of the accounting standards the defendants are alleged to have breached, Am. Compl. ¶¶ 17-39, and plainly inapposite caselaw, Suppl. Compl. ¶ 198, Pl.'s Opp. at 3.  Courts in other jurisdictions have held that "an alleged violation of a rule of professional conduct . . . [does not] give[] rise to a civil cause of action arising from such a violation."  Kanani v. Frost, Ruttenberg & Rothblatt, P.C., No. 04-CV-1728 (JCH), 2005 WL 1661521, *3 (E.D.Mo. Jul. 13, 2005) (citing cases).  In short, the plaintiff has made no showing that the defendants owe a judicially enforceable duty to the public at large for a breach of professional and governmental accounting standards, and the Court's own research has yielded no pertinent authority.  The Court thus concludes that the plaintiff cannot rely on its

---

[15](...continued)
accepted government auditing standards."  Am. Compl. ¶ 37.

status as a member of the public as the basis for seeking judicial enforcement of the defendants'
ethical obligations.

Nor has the plaintiff articulated a cognizable fraud claim in this action.  Nowhere in the
plaintiff's complaint does it allege that it relied to its detriment on the purported "material
misstatements" in the 2001 GAO Report.  See generally Am. Compl; Suppl. Compl.  Rather, the
plaintiff asserts that "[t]his Court can enforce and declare [the] GAO's ethical obligations where
[the] GAO's fraudulent misrepresentations have misled anyone to [the plaintiff's] detriment."
Pl.'s Opp. at 19.  The plaintiff is mistaken.  "In order to state a claim for fraud . . . the
plaintiff['s] allegations must indicate that [its] reliance on the allegedly fraudulent representation
was reasonable."  Burman v. Phoenix Worldwide Indus., Inc., 384 F. Supp. 2d 316, 329 (D.D.C.
2005) (internal quotation marks and citation omitted); see also Alicke v. MCI Communications
Corp., 111 F.3d 909, 912 (D.C. Cir. 1997) (holding that a fraud claim "requires, among other
things, an allegation that the plaintiff acted in reliance on the alleged misrepresentation").  The
plaintiff has made no such allegation.  Thus, the plaintiff's claim for fraudulent conduct is legally
deficient and must consequently fail.

**E. The Plaintiff's Other Claims**

Finally, the plaintiff raises several miscellaneous claims, none of which state a valid
cause of action.  First, the plaintiff contends that this Court is empowered under the Mandamus
and Venue Act to compel the defendants to issue a report in full conformance with Section 805.
Pl.'s Opp. at 25-30.  However, mandamus relief "is available only in extraordinary situations,"
and even then only if the plaintiff has "a clear and indisputable right to relief."  In Re Cheney,

17

406 F.3d 723, 729 (D.C. Cir. 2005) (internal quotation marks and citation omitted).  As already

discussed, the plaintiff has no such right here, and mandamus relief is therefore unavailable.

The plaintiff also claims in its Amended Complaint that "the Declaratory Judgment Act

and the All Writs Act provide further authority for the requested relief."  Am. Compl. ¶ 8

(citation omitted).  The plaintiff is incorrect in both respects.  As the plaintiff later concedes, "the

Declaratory Judgment Act . . . provides remedies, but does not itself confer jurisdiction.  Pl.'s

Opp. at 34.  Similarly, the All Writs Act, 28 U.S.C. § 1651, "is not an independent grant of

jurisdiction to a court; it merely permits courts to issue writs in aid of jurisdiction acquired to

grant some other form of relief."  Telecomm. Research and Action Ctr. v. FCC, 750 F.2d 70, 77

(D.C. Cir. 1984).  Because the plaintiff has not stated any claims upon which relief can be

granted, neither the Declaratory Judgment Act nor the All Writs Act are of any value in

evaluating the Court's ability to entertain this action.[16]

### IV. Conclusion

For the foregoing reasons, the Court concludes that the plaintiff has failed to state a claim

upon which relief can be granted.  The defendants produced and submitted the 2001 GAO Report

in accordance with Section 805, a congressional reporting statute that creates no private cause of

action, and the sufficiency of such a report is a matter for Congress to decide.  Neither do the

defendants owe a judicially enforceable duty to the plaintiff under the relevant governmental and

---

[16]     In its opposition to the defendants' motion to dismiss, the plaintiff sets forth for the first time
several other claims for relief, all predicated on the plaintiff's contention that "[e]ven without enforceable ethics
standards or judicial review of reports to Congress, courts can enjoin an agency's injury-causing actions absent
express authority to undertake those actions."  Pl.'s Opp. at 30-33.  Even assuming the merits of this position, the
plaintiff cannot amend its complaint de facto to survive a motion to dismiss by asserting new claims for relief in its
responsive pleadings.  See, e.g., Calvetti v. Antcliff, 346 F. Supp. 2d 92, 107 (D.D.C. 2004) (citing cases).
Therefore, the Court does not, and cannot, consider claims first raised in the plaintiff's opposition.

professional standards of ethics.  Accordingly, notwithstanding the plaintiff's evident

disagreement with the scope, methodology, and conclusions of the 2001 GAO Report, it has

articulated no cognizable right to judicial relief.  The Court therefore grants the defendants'

motion to dismiss.

        **SO ORDERED** this 15th day of March, 2006.[17]

<br>

                    REGGIE B. WALTON
                    United States District Judge

---

[17] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.